UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CITY OF SOMERVILLE,<br>      Plaintiff,<br>  v.<br><br>SHAWN WILLIAMS, as SUPERVISOR OF PUBLIC RECORDS,<br>      Defendant. | CIVIL ACTION<br>NO. 1:15-cv-12331 |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF JURISDICTION OR FOR FAILURE
TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

In this action the City of Somerville challenges a decision of the Massachusetts Supervisor of Public Records ordering the City to disclose lists of residential parking permits under the Massachusetts public records law. The complaint should be dismissed in its entirety for lack of jurisdiction or for failure to state a claim for relief. Several of the City's claims arise solely under state law and are thus barred by sovereign immunity, as construed in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). And the remaining federal claims— which allege that disclosure of the lists would violate residents' rights under the Driver's Privacy Protection Act ("DPPA") and the equal protection clause of the federal constitution—should be dismissed for lack of standing because the City has not sustained injury in its own right and cannot establish standing by relying on purported injury to third parties. Alternatively, the federal claims fail on their merits because the DPPA protects only personal information contained in the records of state motor vehicle departments, which does not include information in municipal parking-permit records, and because the City has not alleged that the Supervisor treated the residents differently from a "similarly situated" group or that he acted with malice, as is required to establish an equal protection violation.

**BACKGROUND**

In October 2014 Boston Globe reporter Todd Wallack sent a request for records to the City pursuant to the Massachusetts public records law, Mass. Gen. Laws c. 66, § 10. Compl. ¶ 9 & Exh. A. He sought in particular "a copy of the [C]ity's electronic list of residential parking permits," "including the permit number, issue date, expiration date, vehicle model/make/year, license plate number, email, first name, last name, address, zip code, phone numbers and email address." *Id.* The City responded that it would "produce the permit number, issue date, expiration date, vehicle model/make/year, and license plate number" but would redact the remaining information. *Id.* ¶ 10 & Exh. B. According to the City, the remaining information fell within two exemptions to the public records law: exemption (a), which exempts materials that are "specifically or by necessary implication exempted from disclosure by statute," Mass. Gen. Laws c. 4, § 7, Twenty-sixth (a); and exemption (c), which exempts "materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy," *id.* § 7, Twenty-sixth (c). Compl. ¶ 10 & Exh. B.

Dissatisfied, Wallack appealed to the Supervisor. *Id.*, Exh. D. After considering the City's written submissions, *id.* ¶ 11 & Exhs. B, C, the Supervisor determined that neither exemption applied to the parking-permit lists and ordered the City to disclose them or provide Wallack with "a written explanation, *with specificity*, how a particular exemption applies to each record." *Id.*, Exh. D (emphasis in original). In response the City provided an additional written explanation, *id.* ¶ 13 & Exh. E, whereupon Wallack again sought review from the Supervisor. *Id.* ¶ 14 & Exh. F. On June 5, 2015, the Supervisor issued a second decision, reaffirming that neither exemption was applicable and ordering the City to disclose the lists. *Id.* ¶ 15 & Exh. G.

On June 15, 2015, the City initiated this action, purporting to appeal the Supervisor's decision to this Court. The complaint raises four claims, several of which arise solely under state law: Count I, which seeks review of the Supervisor's decision under the Massachusetts Administrative Procedures Act, Mass. Gen. Laws c. 30A, § 14(7), *see* Compl. ¶¶ 16-20; Count III, which alleges a violation of a right to privacy under Mass. Gen. Laws c. 214, § 1B, *see* Compl. ¶¶ 23-24; and that part of Count IV that alleges an equal protection violation under the Massachusetts Constitution, *see id.* ¶¶ 25-26. The other claims, Count II and the remainder of Count IV, allege, respectively, a violation of the DPPA, 18 U.S.C. §§ 2721-2725, *see* Compl. ¶¶ 21-22, and an equal protection violation under the United States Constitution, *see id.* ¶¶ 25-26.

## ARGUMENT

I.  **THE STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF JURISDICTION BECAUSE THEY ARE BARRED BY THE ELEVENTH AMENDMENT.**

This Court lacks jurisdiction over the state-law claims because the Eleventh Amendment shields the Supervisor from having to defend those claims in federal court. It is long settled that, under *Pennhurst*, a plaintiff cannot bring suit in federal court against state officials for asserted violations of state law. 465 U.S. at 103-06, 121; *see Lopez v. Massachusetts*, 588 F.3d 69, 73 n.1 (1st Cir. 2009); *O'Brien v. MBTA*, 162 F.3d 40, 44 (1st Cir. 1998); *Tasse v. Spencer*, No. 13-12269-RWZ, 2014 WL 4924412, at *4 (D. Mass. Sept. 29, 2014); *Tyler v. Massachusetts*, 981 F. Supp. 2d 92, 96 (D. Mass. 2013). As *Pennhurst* observes, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." 465 U.S. at 106. The Court thus held that the exception to Eleventh Amendment immunity established in *Ex parte Young*, 209 U.S. 123 (1908)—which authorizes suits for prospective relief against state officials based on ongoing

violations of *federal* law—is "inapplicable in a suit against state officials on the basis of state law." *Pennhurst*, 465 U.S. at 106; *see Tyler*, 981 F. Supp. 2d at 96. The *Pennhurst* doctrine applies to state-law claims brought into federal court under supplemental jurisdiction, which is the asserted basis for jurisdiction here. 465 U.S. at 121; *Lopez*, 588 F.3d at 73 n.1; *see* Compl. ¶ 5.

Count I's reference to the DPPA does not change this result. Count I arises under the Massachusetts Administrative Procedures Act; it does not raise any direct claim under the DPPA. (That claim is raised in Count II, which should be dismissed for a number of different reasons, as explained below.) Likewise, state law is the sole basis for Count III and the part of Count IV alleging a violation of the Massachusetts constitution. As the Court lacks jurisdiction to consider these claims, they must be dismissed under Rule 12(b)(1). *See Villanueva v. United States*, 662 F.3d 124, 126 (1st Cir. 2011) (sovereign immunity "is jurisdictional in nature"); *Hootstein v. Collins*, 670 F. Supp. 2d 110, 114 (D. Mass. 2009) ("federal courts have no jurisdiction to entertain suits that seek to require that the state official comply with *state* laws") (emphasis in original).

II. **THE DPPA CLAIM SHOULD BE DISMISSED FOR LACK OF JURISDICTION OR FOR FAILURE TO STATE A CLAIM FOR RELIEF.**

   A. **The City Lacks Standing Because It Suffered No Injury Under the DPPA.**

The "irreducible constitutional minimum" of standing contains three elements: (1) an "'injury in fact'"—"an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) a "likel[ihood] . . . that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks omitted); *see Osediacz v. City of Cranston*, 414 F.3d 136, 139

4

(1st Cir. 2005). In addition to these constitutional requirements, standing has a prudential component, which requires, among other things, that plaintiffs assert their own rights, not those of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Osediacz*, 414 F.3d at 139. The party invoking federal jurisdiction has the affirmative burden to prove each of these elements. *Osediacz*, 414 F.3d at 139.

The City has not met its burden here because it has failed to make the threshold showing that it has sustained an injury in fact. To satisfy this element of standing, the City must demonstrate that it has "suffered 'an invasion of a legally protected interest' under the DPPA." *Pichler v. UNITE*, 542 F.3d 380, 390 (3d Cir. 2008) (quoting *Lujan*, 504 U.S. at 560); *accord Rodriguez v. Ampco Parking Sys.*, No. C09-1789 MJP, 2010 WL 3061600, at *3 (W.D. Wash. Aug. 2, 2010). But the DPPA protects only a limited private interest: it provides that a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable *to the individual to whom the information pertains*, who may bring a civil action." 18 U.S.C. § 2724(a) (emphasis added); *see Pichler*, 542 F.3d at 391 (the DPPA "protects the privacy interests of 'the individual to whom the [personal] information pertains'").

The City is not an "individual to whom the [personal] information pertains" and thus cannot show that the Supervisor's decision violates any of its own protected interests under the DPPA. To overcome this hurdle, the City asserts that the decision "effectively requires the City . . . to violate the privacy rights of residents in contravention of the intent of the [DPPA]." Compl. ¶ 22. But to establish injury in fact, the City must show an invasion of its own rights; it cannot rely on purported injury to the rights of others. *Warth*, 422 U.S. at 499; *Osediacz*, 414

F.3d at 139; *Hootstein*, 670 F. Supp. 2d at 115 n.5. As the decision has caused no injury to the City itself, Count II should be dismissed for lack of jurisdiction. *See Osediacz*, 414 F.3d at 139.

      **B.    The City Has No Private Right of Action Under the DPPA.**

For similar reasons, Count II should be dismissed because the City has no cause of action under the DPPA. Again, the DPPA authorizes private actions only by "the individual to whom the [personal] information pertains." 18 U.S.C. § 2724(a); *see Pichler*, 542 F.3d at 391 ("The DPPA thus confers a cause of action to 'the individual' whose personal information from their motor vehicle records is at issue."); *McCready v. White*, 417 F.3d 700, 703 (7th Cir. 2005) ("The statute authorizes private suits, but only by persons whose information has been disclosed improperly."); *accord Rodriguez*, 2010 WL 3061600, at *1. The City is not an "individual," and the parking-permit lists do not contain its "personal information." It therefore has no right to sue under the DPPA.

      **C.    The City Fails to State a Claim for Relief.**

Alternatively, the City fails to allege facts sufficient to state a DPPA claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Lister v. Bank of Am., N.A.*, 790 F.3d 20, 23 (1st Cir. 2015). The DPPA protects only "the disclosure of personal information contained *in the records of state motor vehicle departments*." *Reno v. Condon*, 528 U.S. 141, 143 (2000) (emphasis added); *accord McCready v. White*, 417 F.3d 700, 705 (7th Cir. 2005); *Mallak v. Aitkin Cnty.*, 9 F. Supp. 3d 1046, 1051 (D. Minn. 2014). To that end, the DPPA prohibits "[a] State department of motor vehicles, and any officer, employee, or contractor thereof" from knowingly disclosing personal information "obtained by the department in connection with a motor vehicle record," subject to numerous exceptions. 18 U.S.C. § 2721(a); *see id.* § 2721(b) (listing exceptions). It also prohibits private parties from knowingly obtaining or disclosing

"personal information, from a motor vehicle record, for any use not permitted under [§] 2721(b)." *Id.* § 2722. "Motor vehicle record" is defined in turn as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a [State] department of motor vehicles." *Id.* § 2725.

As the Supervisor correctly determined, the parking permits are not "motor vehicle records" under the DPPA, as they were issued by the City and not by the Massachusetts Registry of Motor Vehicles. Compl., Exh. D, p. 2, Exh. G, p. 2. In fact, the City admitted in its written submissions that "the DPPA does not expressly prohibit the release of the driver information." *Id.*, Exh. C, Exh. E, p. 2. While the City now argues that disclosing the information would contravene "the intent of" the DPPA, *id.* ¶ 22, this Court's interpretative inquiry should begin and end with the statutory language, which is plainly limited to information contained in the records of state departments of motor vehicles. *See Downing v. Globe Direct LLC*, 682 F.3d 18, 25 (1st Cir. 2012) (rejecting argument that disclosure of materials would violate "spirit" of the DPPA, where statutory language authorized the disclosure); *United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 579 F.3d 13, 23 (1st Cir. 2009) ("[W]e end our review when the plain language of a statute unambiguously reveals its meaning, and the revealed meaning is not eccentric.") (quotation marks omitted). Because the parking permits were not issued by the Registry of Motor Vehicles, the DPPA has no application here.

### III. THE FEDERAL EQUAL PROTECTION CLAIM SHOULD BE DISMISSED FOR LACK OF JURISDICTION OR FOR FAILURE TO STATE A CLAIM FOR RELIEF.

#### A. The City Lacks Standing Because It Suffered No Injury Under the Equal Protection Clause.

In Count IV the City claims that the Supervisor's decision violates the federal equal protection clause "by creating an unlawful classification between drivers based upon whether

7

they afford themselves of the privilege of obtaining a resident parking permit." Compl. ¶ 26. But again, the City cannot establish standing by alleging a violation of the rights of third parties. *Warth*, 422 U.S. at 499; *Osediacz*, 414 F.3d at 139. The federal component of Count IV should therefore be dismissed for lack of jurisdiction. *See Osediacz*, 414 F.3d at 139.

      **B.**    **The City Fails to State a Claim for Relief.**

Alternatively, the City fails to state a plausible claim of an equal protection violation. "A plausible equal protection violation is established when a plaintiff shows by . . . well-pleaded facts that [it] was treated differently from others similarly situated based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Clark v. Boscher*, 514 F.3d 107, 114 (1st Cir. 2008) (quotation marks and alterations omitted); *accord Aponte-Ramos v. Álvarez-Rubio*, 783 F.3d 905, 908 (1st Cir. 2015); *Rocket Learning, Inc. v. Rivera-Sánchez*, 715 F.3d 1, 10 (1st Cir. 2013). Even if the City had standing to assert the rights of its residents, the claim would fail for two reasons under this test.

First, the City has not presented two "similarly situated" groups for comparison. Two groups are similarly situated if "a prudent person, looking objectively at the incidents [complained of], would think them roughly equivalent and the protagonists similarly situated in all relevant respects. . . . [The] Court must be able to compare apples to apples." *Clark*, 514 F.3d at 114 (quotation marks and alteration omitted). Stated differently, "the proponent of the equal protection violation must show that the parties with whom he seeks to be compared have engaged in the same activity vis-à-vis the government entity without such distinguishing or mitigating circumstances as would render the comparison inutile." *Bruns v. Mayhew*, 750 F.3d 61, 66 (1st Cir. 2014). Here, the two identified groups have not "engaged in the same activity

vis-à-vis the government entity": one group has received the benefit of a residential parking permit from the City, while the other has not. They are thus not similarly situated for purposes of assessing the City's equal protection claim. *Cf. Wine & Spirits Retailers, Inc. v. Rhode Island*, 481 F.3d 1, 7 (1st Cir. 2007) (businesses in different fields are not similarly situated and can be subject to different rules); *37712, Inc. v. Ohio Dep't of Liquor Control,* 113 F.3d 614, 620-23 (6th Cir. 1997) (holders of different licenses are not similarly situated).

Second, the City has not alleged, nor could it plausibly allege, that the Supervisor's decision was made with "intent to inhibit or punish the exercise of constitutional rights" or with "malicious or bad faith intent to injure a person." *Clark*, 514 F.3d at 114. This is fatal to the City's claim, as no suspect classification is implicated by the decision. *Id.*

## **CONCLUSION**

For the above reasons, the Court should dismiss the complaint in its entirety under Fed. R. Civ. P. 12(b)(1) or Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

SHAWN WILLIAMS, as SUPERVISOR OF PUBLIC RECORDS

By his attorney,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Sookyoung Shin
Sookyoung Shin, BBO No. 643713
Assistant Attorney General
Government Bureau
One Ashburton Place
Boston, MA 02108-1698
(617) 963-2052
August 7, 2015                    sookyoung.shin@state.ma.us

CERTIFICATE OF SERVICE

      I hereby certify that the above document will be served on August 7, 2015, by electronic notice for registered counsel and a copy will be served by first-class mail, postage pre-paid, for non-registered counsel.

      /s/ Sookyoung Shin
      Sookyoung Shin
      Assistant Attorney General