UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
**************************************
CITY OF SOMERVILLE,                  *
     Plaintiff                       *
                                     *
v.                                   *    CIVIL ACTION
                                     *    NO 1:15-cv-12331
SHAWN WILLIAMS, as SUPERVISOR        *
OF PUBLIC RECORDS,                   *
     Defendant.                      *
                                     *
**************************************
```

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

The City opposes the motion to dismiss filed by the Defendant with respect to Counts I, II, and III of the Complaint. The City does not oppose the motion to dismiss for Count IV of the Complaint, given that the core issues before the Court are set forth in Counts I - III.

This is a case of first impression in connection with an appeal by the City of Somerville under the State Administrative Procedures Act (G.L.c. 30A, § 14(1) and (7)) involving a decision of the Commonwealth of Massachusetts Supervisor of Public Records ("Supervisor"). This Court has jurisdiction because the case raises a federal question involving the implications and privacy interests contemplated by the Driver Privacy Protection Act ("DPPA") (28 U.S.C. §1331; 18 U.S.C. § 2721).

On June 6, 2015, the Supervisor ordered the City of Somerville to provide an unredacted copy of residential parking permits held by Somerville to Boston Globe Reporter Todd Wallack. For the reasons stated below, the Supervisor's decision improperly orders the City of Somerville to release personal, private information of resident drivers that is, by necessary implication,

exempt from disclosure under the DPPA, and the disclosure of which may constitute an unwarranted invasion of personal privacy of resident drivers.

Although Courts have interpreted the specific language of the DPPA, no Court has ever examined the "necessary implications" of the statute, which is required for a public records law analysis under Massachusetts State Law.  Likewise, no Court has ever considered whether the DPPA contemplates a privacy interest for personal information required by the City in connection with a resident parking permit, where the permit issued is integral with the right of Somerville residents to operate their motor vehicle in the City of Somerville.

In its motion to dismiss, the Defendant has mischaracterized the entire lawsuit.  The Defendant mistakenly mischaracterizes the lawsuit as a claim for invasion of privacy of residents and a claim for a violation of the Driver Privacy Protection Act.   The City does not seek to recover for violation of any privacy rights and does not seek to recover for a violation of the DPPA.  Instead, this lawsuit is an administrative appeal challenging the decision of the Supervisor of Public Records because it misinterpreted the implications of the DPPA and applied the DPPA in a manner that it may constitute an unwarranted invasion of privacy of resident drivers.

The City has standing to challenge the administrative agency decision under G.L. c. 30A, § 14, which provides, in relevant part, that any person aggrieved by a final decision in an adjudicatory proceeding shall be entitled to judicial review.

## **STATEMENT OF FACTS**

On October 2, 2014, Todd Wallack, Boston Globe Reporter, sent a public records request to Suzanne Rinfret, Director of the Somerville Department of Traffic and Parking, requesting a copy of the City's electronic list of residential parking permits.  Compl. ¶ 9 & Exh. A.  The City responded to the request on October 14, 2014, indicating that it would provide the documents,

except that it would redact the first name, last name, address, zip code, phone numbers and email addresses of the permit holders pursuant to exemption (a) and (c) of the public records law. *Id.* ¶ 10 & Exh. B. On November 12, 2014, the City provided an additional submission on behalf of the City providing supporting arguments. *Id.* ¶ 11 & Exh. C.

On January 6, 2015, the Supervisor found that the City must either provide Mr. Wallack with an unredacted copy of the requested record, or provide an additional written explanation, with specificity, how a particular exemption applies to each record. *Id.* ¶ 12 & Exh. C. On January 16, 2015, in compliance with the Supervisor's Order, the City provided an additional written explanation articulating why particular exemptions applied to the records requested. *Id.* ¶ 13 & Exh. E). On March 6, 2015, the Supervisor acknowledged receipt of a request for reconsideration to reopen the appeal, filed by Mr. Wallack. *Id.* ¶ 14 & Exh. F. On June 15, 2015, the Supervisor ordered the City to provide unredacted records. *Id.* ¶ 15 & Exh. G.

**I.  THE CLAIMS ARE NOT BARRED BY THE ELEVENTH AMENDMENT BECAUSE THE CLAIMS DO NOT ARISE SOLELY UNDER STATE LAW**.

The Defendant claims that the Complaint should be dismissed in its entirety because it alleges all state law claims barred by the Eleventh Amendment. The Defendant's contention is without merit, because the Complaint involves enforcement of the DPPA, a federal law.

Under Ex parte Young, private parties may sue state officials in their official capacity to enforce federal laws and regulations, but only for prospective injunctive and declaratory relief. Ex Parte Young, 209 U.S. 123 (1908).

Count I sets forth a claim under the Massachusetts Administrative Procedures Act. However, the validity of the Supervisor's decision requires an analysis of the implications and privacy interests contemplated by the DPPA, a federal law.

Exemption (a) of the Massachusetts Public Records Law exempts from disclosure those records that are "specifically or by necessary implication exempted from disclosure by statute." The statute at issue before the Court is the DPPA. Therefore, consideration as to the applicability of exemption (a) involves a determination of the enforcement of a federal law.

Likewise, exemption (c) of the Massachusetts Public Records Law exempts from disclosure those records that "relate to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy." The personal privacy for individuals is the privacy interests contemplated by the DPPA. Therefore, consideration of the applicability of exemption (c) also involves a determination of the enforcement of a federal law.

Count II alleges that the Supervisor's decision effective requires the City of Somerville to violate privacy rights in contravention of the intent of the DPPA, a federal law. State law also is not the sole basis for Count III. In order to determine whether the privacy rights of residents are implicated, the privacy interests contemplated by the DPPA must be considered.

Therefore, because the implication and privacy interests contemplated by the DPPA, a federal law, are before the Court, the Supervisor does not have the benefit of Eleventh Amendment immunity.

## II.   THIS COURT HAS STANDING, AS CUSTODIAN OF RECORDS, TO CHALLENGE AN ORDER REQUIRING THE RELEASE OF RECORDS DUE TO PRIVACY INTERESTS OF AFFECTED INDIVIDUALS.

The Defendant claims that the City lacks standing because it suffered no injury under the DPPA. The Defendant's claim mischaracterizes the nature of the City's claim. The City does not seek to recover for injury under the DPPA, and has not filed a private action on behalf of its residents under the DPPA. Instead, the City's action challenges the decision of the Supervisor of Public Records ordering it to release records of residents containing personal, private information.

4

In determining whether a party has standing to bring a claim, the court considers "the language of the statute, the Legislature's intent and purpose in enacting the statute, the nature of the administrative scheme, decisions on standing, and any adverse effects that might occur if standing is recognized." Indeck Maine Energy, LLC v. Commissioner of Energy Res., 454 Mass. 511, 517-518 (2009).

The plain language of the statute supports the City's standing. G. L. c. 30A, § 14 provides that any person aggrieved by a final decision of any agency in an adjudicatory proceeding shall be entitled to judicial review. A "person" for the purposes of this Act includes all political subdivisions of the Commonwealth. G. L. c. 30A, § 14. The decision of the Supervisor of Public Records under G. L. c. 60, § 10 falls within the definition of "adjudicatory proceedings." Leeman v. Cote, 2006 Mass. Super. Lexis 404 (2006).

Furthermore, the United States Supreme Court has recognized that the City is responsible for protecting the privacy of its residents when it collects their personal information. The United States Supreme Court has stated as follows:

> We are not unaware of the threat to privacy implicit in the accumulation of vast amounts of personal information in computerized data banks or other massive government files . . .The right to collect and use such data for public purposes is typically accompanied by a concomitant statutory or regulatory duty to avoid unwarranted disclosures … [I]n some circumstances that duty has its roots in the Constitution.

Whalen v. Roe, 429 U.S. 589 (1977). Therefore, according to the Court in Whalen, when the government is in possession of personal information, it has the responsibility to keep that information secure and avoid unwarranted disclosures.

In Attorney General v. School Committee of Northampton, 375 Mass. 127 (1978), a reporter requested a list of all applicants for school superintendent. Id. at 128. The Supreme Judicial Court of Massachusetts specifically agreed with the school committee that "if a

candidate had a statutory right to privacy in [certain] circumstances, the school committee was not obliged to disclose his name." Id. at 130.

In the case before this Court, the Supervisor of Public Records ordered the City to release records which contain private, personal information of residents, for which the DPPA implications are at stake. Given the caselaw, the City, as custodian of records, is responsible for securing the information it collects. The City therefore has standing to protect and secure certain private, personal information by challenging the decision of the Supervisor of Public Records with respect to the implications and the privacy interests contemplated by the DPPA.

### III.   THE CITY STATES A VALID CLAIM FOR RELIEF.

A.   <u>The Driver Privacy Protection Act, by Necessary Implication, Exempts Personal Information Contained in City Resident Parking Permits From Disclosure Under The Massachusetts Public Records Law</u>.

The Defendant claims that the City fails to state a claim for relief because the DPPA only applies to records provided by the Registry of Motor Vehicles. More specifically, the Supervisor found that "information provided by citizens to the City for resident parking permit programs does not qualify under the Act, as the information is not directly provided by the Registry of Motor Vehicles." (See Complaint, Exhibit G). The City acknowledges that DPPA does not specifically prohibit the release of information obtained and collected by the City.

However, the Supervisor erroneously failed to evaluate whether a municipality may withhold the information provided by residents to the City on the grounds that it is by "necessary implication" exempt from disclosure based on the language of the DPPA. Given the necessary implications of the DPPA, for the reasons stated below, the personal, private information provided by citizens in their applications to the City for resident parking permits are exempt from disclosure under exemption (a) of the Public Records Law.

Exemption (a) of the public records law provides an exemption from disclosure for records that are specifically or by necessary implication exempted from disclosure by statute. G.L. c. 4 § 7(26)(a). With respect to the necessary implication portion of the statute, a governmental entity may use exemption (a) as a basis for withholding requested materials where the language of the exempting statute suggests that the public's right to inspect records under the public records law is restricted. Attorney General v. Collector of Lynn, 377 Mass. 151, 154 (1979); Ottaway Newspaper Company v. Appeals Court, 372 Mass. 539, 545-546 (1977).

The term "necessary implication" "includes such inferences as may logically be drawn from the purpose or object of the statute, from what the legislature must have presumed to have intended, and from the necessity of making the statute effective and operative." Statutory Construction, Ruben E. Agpalo, Copyright, 1986, Section 4.24, page 119 (See Exhibit B). The term "necessary implication" represents the "necessary indicia of congressional intent." Dorsey v. United States, 132 S. Ct. 2321, 2012 U.S. Lexis 4664 (2012).

The DPPA generally prohibits a state department of motor vehicles from disclosing or releasing "personal information … about any individual obtained by the department in connection with a motor vehicle record." 18 U.S.C. § 2721 (a). A "motor vehicle record" is defined as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. §2725 (1).

Under the DPPA, "personal information" is defined as "[i]nformation that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725.

7

The DPPA has a stated purpose "to protect the personal privacy of licensed drivers consistent with the legitimate needs of business and government." 139 Cong. Rec. S15745-01, 1993 WL 470986 (Cong. Rec). The DPPA was enacted as a "public safety measure, designed to prevent stalkers and criminals form using motor vehicle records to acquire information about their victims." Dahlstrom v. Sun-Times Media, 777 F.3d 937 (2015). A motivating impetus for the Act's passage was the 1989 murder of television actress Rebecca Shaeffer by an obsessed fan who obtained her unlisted home address from the California Department of Motor Vehicles. Id.

Congress, in passing the DPPA, recognized the importance of protecting the privacy of home addresses in the context of motor vehicle related information. Throughout congressional debate over the bill, members of Congress highlighted the need for the Act by describing numerous incidents of violence accomplished through the use of DMV records. See 139 Cong. Rec. S15475-01, 1993 WL 470986 (Cong. Rec.) (statement of Sen. Boxer stating that a group of teenagers in Iowa used license plates of expensive cars to get information on potential burglary targets; in Arizona, a woman was murdered by a man who had obtained her home address from that State's DMV); (statement of Sen. Rob listing incidents of a case in Virginia where a woman received antiabortion literature and black balloons at her home after her license plate number had been taken outside a health clinic that performed abortions, and also noting a situation in Georgia where an obsessive fan acquired the address of a model and assaulted her at her home).

All Somerville parking permit applicants are required to provide to the City proof of registration with the Registry of Motor Vehicles in order to obtain a parking permit. (See Exhibit A). The parking permit issued is integral to owning and operating a motor vehicle. The information which the City seeks to withhold is the same information protected from disclosure by the Registry of Motor Vehicles.

If the private information is not exempt from disclosure, the privacy and security protections contemplated by the DPPA would be rendered meaningless for essentially every Somerville resident who needs a resident parking permit.  The release of the Somerville residents' personal information would effectively undermine what Congress intended to accomplish – protecting the privacy of resident's motor vehicle related information.   Therefore, by necessary implication arising from an interpretation of the DPPA, in order to advance the public safety goals of the legislation, the requested information is exempt from disclosure under Exemption (a).  See Atlas Transit v. Korte, 21 WI App. 286 (2001) (Curley, J., dissenting) ("Simply put, the drafters of the DPPA could never have intended that other government agencies be compelled to disclose precisely the same 'personal information' protected by the DPPA.")

    B.    <u>The Personal, Private Information is Exempt From Disclosure Under Exemption (c) of The Public Records Law Because The Documents Contain "Intimate Details of a Highly Personal Nature" And  The Public Interest in Disclosure is Outweighed by The Privacy Rights of Individuals</u>.

In its Motion to Dismiss, the Defendant fails to address whether exemption (c) of the Public Records Law applies.  In the case before this Court, the Supervisor concluded that names, addresses, and telephone numbers are not intimate details of a highly personal nature. Furthermore, the Supervisor determined that this information was readily available to the public from other sources.  This ruling was erroneous because in the context of the DPPA, the personal information constitutes intimate details of a highly personal nature.  Furthermore, driver information is not readily available from other sources.  Because the information constitutes an intimate detail of a highly personal nature, the Supervisor was required to balance the public interest and privacy interests of individuals, given the framework and purpose of the DPPA.

i.   The Applicable Legal Test Under Exemption (c) of the Public Records Law.

The second clause of exemption (c) of the Public Records Law, at issue here, exempts from disclosure "materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy." G.L. c. 4, § 7(26)(c). Information is considered private when it constitutes "intimate details of a highly personal nature." Georgiou v. Commissioner of the Dep't of Indus. Accidents, 67 Mass. App. Ct. 428 (2006). The privacy standard contained in exemption (c) is "more favorable to nondisclosure" than the Massachusetts privacy statute, G. L. c. 214, §1B, which provides a right only against "unreasonable, substantial or serious interference . . . with privacy." Pottle v. Sch. Comm. Of Braintree, 395 Mass. 861, 866 (1985).

Once it is established that disclosure of information requested under the public records law will constitute an invasion of privacy, disclosure will be required if "the public interest in obtaining information substantially outweighs the seriousness of any invasion of privacy." Attorney General v. Collector of Lynn, 377 Mass. 151, 156 (1979). Therefore, when applying this clause of the exemption to requested records, it is necessary to perform a two-step analysis: first, determine whether the information constitutes an "intimate detail of a highly personal nature;" and second, determine whether the public interest in disclosure outweighs the privacy interest associated with disclosure of the highly personal information. See Worcester Telegram & Gizette Corp. v. Chief of Police of Worcester, 58 Mass. App. Ct. 1, 7-8 (2003).

The Massachusetts Appeals Court has stated that "[a]nalysis of the applicability of the second clause of exemption (c) requires a balancing between the seriousness of any invasion of privacy that may exist and the public's right to know." Georgiou v. Commissioner of Dept. of Indus. Accs., 67 Mass. App. Ct. 428 (2006). Furthermore, "[t]he phrase 'clearly unwarranted invasion of personal privacy' enunciates a policy that will involve balancing of interests between

the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to government information. The application of this policy should lend itself particularly to those Government agencies where persons are required to submit vast amounts of personal data usually for limited purposes." Doe v. Registrar of Motor Vehicles, 26 Mass. App. Ct. 415, citing S. Rep. No. 813, 89th Cong., 1st Sess. (1965).

    ii.    The Personal Information Requested From the City Constitutes "Intimate Details of a Highly Personal Nature" under Massachusetts Public Records Law.

With respect to the invasion of privacy implicated in the disclosure of individual's names, addresses, phone number, and email addresses, the personal information requested from the City constitutes "intimate details of a highly personal nature" under the public records law.

Courts have established a privacy interest with respect to one's home address. In United States Dep't of Defense v. Federal Labor Relations Authority, 510 U.S. 487 (1994), the U.S. Supreme Court stated:

> It is true that home addresses are publicly available through sources such as telephone directories and voter registration lists, but in an organized society, there are few facts that are not at one time or another divulged to another…. An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information is made available to the public in some form….Id.at 500. "We are reluctant to disparage the privacy of the home, which is accorded special consideration in our Constitution, laws and traditions." Id. at 501.

Courts have stated that there is a "discernable interest exists in the ability to retreat to the seclusion of one's home and to avoid enforced disclosure of one's [name and] address." FLRA v. U.S. Dept. of Navy, Naval Com. Unit, 941 F.2d 49, 55 (1st Cir. 1991). The United States Supreme Court has recognized that individuals have "some nontrivial privacy interest" in avoiding the influx of unwanted, unsolicited email or the telephone calls and visits that could follow from disclosure of their names and addresses. Department of Defense v. FLRA, 510 U.S. 487, 501 (1994). Furthermore, "[i]n our society, individuals generally have a large measure of

11

control over the disclosure of their own identities and whereabouts." National Ass'n of Retired Federal Emp. v. Horner, 879 F.2d 873, 975 (D.C. Circ. 1989), cert. denied, 494 U.S. 1078 (1990).  This "is evidenced by unlisted telephone numbers, by which subscribers may avoid publication of an address in the public directory, and postal boxes, which permit the receipt of mail without disclosing the location of one's residence."  Id.

In Massachusetts, the "expectations of the data subject are relevant in determining whether disclosure might be an invasion of privacy." Torres v. Attorney General, 391 Mass. 1, 9 (1984).  Also, "[t]he same information about a person, such as his name and address, might be protected from disclosure as an unwarranted invasion of privacy in one context and not in another."  Id.   Whether a privacy is interest implicated in a particular case "requires a somewhat more nuanced examination" in light of the context of the disclosure.  Georgiou v. Commissioner of Department of Industrial Accidents, 67 Mass. App. Ct. 428, 434 (2006).

The City acknowledges that individuals do not possess a privacy interest in information that is duplicative of information available from other sources.[1]  See Attorney General v. Collector of Lynn, 377 Mass. 151 (1979) (public availability of records of real estate tax delinquents in other sources reduces the owner's expectation of privacy in nondisclosure of the list of tax delinquents).  The Court of Appeals in the District of Columbia has held that information that would otherwise be subject to a valid FOIA exemption must be disclosed if that information is preserved in a public record or is otherwise easily accessible to the public.  See Niagara Mohalk Power Corp v. DOJ, 169 F.3d 16, 19 (D.C. Cir. 1999).  However, in order for this principle to apply, the requester must be able to point "to specific information in the public domain that appears to duplicate that being withheld." Afshar v. U.S. Dep't of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983).

---

[1] Names and addresses of registered voters are public record in Massachusetts.  G.L. c. 51, § 4.

One Federal Court has stated that:

The compilation of home addresses in widely available telephone directories might suggest a consensus that these addresses are not considered private were it not for the fact that a significant number of persons, ranging from public officials and performers to just ordinary folk, choose to list their telephones privately because they regard their home addresses to be private information. Indeed, their view is supported by decisions holding that home addresses are entitled to privacy under the Freedom of Information Act, which exempts from disclosure personal files "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

Paul P. v. Farmer, 227 F.3d 98, 101 (3rd Cir. 2000) (quoting the Freedom of Information Act, 5 U.S.C. S 552(b)(6)).

In the context of the DPPA, given that information contained in motor vehicle records constitutes "personal information" under applicable federal law, parking permit information obtained by the City which is integral to the use of those motor vehicles containing personal information is also protected.  Turning over parking permit information amounts to in reality turning over the motor vehicle related information protected by the DPPA.  Individuals expect this information to be kept private in light of the recognition of Congress that their driver information is protected from disclosure.  See 139 Cong. Rec. S15475-01, 1993 WL 470986 (Cong. Rec.) (statement of Sen. Biden that Americans do not believe they should relinquish their legitimate expectations of privacy simply be obtaining drivers' licenses or registering their cars).

Indeed, parking permit holders are a subset of those with an RMV driver's license. Without protecting the information, the federal law is meaningless for those Somerville vehicle owners who simply want to park their car where they reside.  As a result, "personal information" under federal law for drivers constitutes "intimate details of a highly personal nature" under applicable state law for those who park their vehicles where they reside.

Names and addresses of Massachusetts drivers are not readily available from other sources.  The voter lists and property tax information do not duplicate the list of drivers.   Drivers may choose to opt out of voting or owning property. Congress recognized that drivers should not

be required to give up their privacy interests in order to drive.  In fact, at the Proceedings and Debates over the DPPA, Congress discussed the impacts of the DPPA on access rules for other kinds of public records held by State and local governments.  Congress recognized that "[t]here are key differences between DMV records and other public records…… Unlike with license plate numbers, people concerned about privacy can usually take reasonable steps to withhold their names and addresses from strangers, and thus limit their access to personally identifiable information contained in voter registration lists, court records, or land records.  By contrast, no one is free to conceal his or her license plate while traveling by automobile." 140 Cong. Rec. H2518-01 (1994) (Statement of Rep. Edwards).

As a result, the Supervisor erred in determining that the requested information is not an "intimate detail of a highly personal nature."  Since the name, addresses, phone numbers, and email addresses of the individuals are intimate details of a highly personal nature, the balancing between an individual's privacy interests and the public interest in disclosure applies, and lends in favor of non-disclosure.

    iii.    <u>The Privacy Interests of the Individual Outweigh the Public Interest in Disclosure Record.</u>

The balancing of a privacy interest against the public interest in disclosure must be done on a case-by-case basis.  <u>See Torres</u>, 391 Mass. At 9 (1984).  In construing the cognate provisions of the FOIA, the United States Supreme Court has observed that "the only relevant public interest in the FOIA balancing analysis [i]s the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties.'" <u>United States Dept. of Defense v. Federal Labor Relations Authority</u>, 510 U.S. 487, 497 (1994).  Furthermore, "[t]he public has an interest in knowing whether public servants are carrying out their duties in an efficient and law-abiding manner." <u>Collector of Lynn</u>, 377 Mass. at 158.

14

"When the information is in the Government's control as a compilation, rather than a record of 'what the government is up to,' the privacy interest is in fact at its apex, while the FOIA-based public interest in disclosure is at its nadir." United States Dep't of Justice v. Reporter Comm. For Freedom of the Press, 489 U.S. 749, 780 (1989).

In this case, the Supervisor failed to articulate any public interest in broadly disclosing the names, addresses, phone numbers, and email addresses of all individuals with parking permits. Alternative, less intrusive means are available to obtain information that would serve the public interest. The City is willing to release information involving resident parking permits that does not involve the release of personal, private information. For example, the City is willing to release the addresses where the permits exist and the number of permits issued per address, or otherwise de-identify or anonymize the data requested. Therefore, the privacy of residents outweighs the public interest in disclosure.

## **CONCLUSION**

For the above stated reasons, the Motion to Dismiss should be denied.

CITY OF SOMERVILLE
By its attorney,

/s/ David P. Shapiro
David P. Shapiro, BBO#565564
Assistant City Solicitor
Law Dept., City Hall
93 Highland Avenue
Somerville, MA 02143
(617) 625-6600, ext. 4400
Dated:  9/10/2015                  law@somervillema.gov

Certificate of Service

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non registered participants on 9/10/2015.

/s/ David P. Shapiro_____
Assistant City Solicitor
City of Somerville